IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRIAN BAKER,

                Plaintiff,

      v.                                 CIVIL ACTION NO. 2:14cv318

CITY OF CHESAPEAKE,

                Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant City of Chesapeake's ("Defendant") Motion for Summary Judgment ("Motion"), ECF No. 10. Defendant alleges that, "based on the undisputed facts . . . Plaintiff is unable to make a prima facie case of any of his counts." ECF No. 11 at 17. For the reasons set for herein, the Court **GRANTS** Defendant's Motion.

### I.     BACKGROUND

#### A. Procedural History

Plaintiff Brian Baker ("Plaintiff") filed his Complaint on June 27, 2014, alleging three counts. ECF No. 1. Count One alleges "ADA Violations," Count Two alleges violations of "Title VII," and Count Three alleges "Retaliation." Id. at 10–13. A jury trial was scheduled to commence on July 7, 2015, ECF No. 9, however, a "short continuance" was granted on June 22, 2015. ECF No. 15.

Defendant filed the instant Motion, along with its supporting memorandum, on June 9, 2015. ECF Nos. 10–11. Plaintiff submitted its Memorandum in Opposition on June 23, 2015. ECF No. 16. Defendant's Rebuttal Brief was filed on June 29, 2015. ECF No. 19. In addition to opposing summary judgment directly, Plaintiff requested leave to amend his Complaint, see

ECF No. 12, seeking what Defendant characterized as a "do over." ECF No. 18. The Motion for Leave was denied by Magistrate Judge Douglas Miller on July 8, 2015. ECF No. 21.

**B. Undisputed Facts**

Plaintiff was hired by Defendant as a "Firefighter Trainee" on March 2, 2009. ECF No. 11 at 3. After completing the Chesapeake Fire Academy ("Academy") in September 2009, Plaintiff was given the position of Firefighter/EMT ("FF/EMT"). Id. The essential job duties of this position include "making inspections of apparatus and equipment and notifying his supervisor of defects," "record keeping and supplies maintenance," and working "with the general public and mak[ing] judgments and decisions to guide others." Id. The mental demands of the position require "normal attention with short periods of concentration for accurate results and occasional exposure to unusual pressure." Id.

Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") while in "middle school or early high school." Id. at 2. Plaintiff graduated from high school and received his EMT basic certification from Tidewater Community College in 2005. Id. He required and received "tutoring and accommodations during school and for tests." Id. Plaintiff did not request any accommodation from Defendant for the written examination portion of the hiring process. Id. Once accepted to the Academy however, Plaintiff was provided with "additional study classes, study guides, and test reviews." Id. at 3.

Plaintiff first placement in his FF/EMT position was "at Station 2 on Freeman Avenue . . . under Lieutenant Duane Daggers." Id. at 4. Plaintiff advised Lt. Daggers of his ADHD and he was provided with certain accommodations to assist him in completing the essential duties of his position. Id. Plaintiff was not denied any requested accommodation while at Station 2. Id.

2

In December 2009, Plaintiff was transferred to Station 9 under Lieutenant William Westberry because Plaintiff had difficulty coping "with the way Lt. Daggers would sometimes speak harshly." Id. Plaintiff stayed at Station 9 for the remainder of his employment as a FF/EMT for Defendant. For his work performed between April 2011 and March 2012, Plaintiff received an annual performance evaluation score of 2.62 out of 5.00, which is categorized as "Improvement Required." See id. at 5.

On March 27, 2012, Plaintiff was arrested for charges of assault and use of obscene language. Id. Pending legal resolution of the charges, Plaintiff was suspended from his regular employment, but was granted "light duty." Id. When his court hearing on these charges was postponed, the suspension was extended, and he was not permitted to continue working light duty. Id. at 5–6.

At this time, Plaintiff repeatedly raised concerns of disparate treatment between himself and other employees, including one female employee and another employee of a different race, whom he claimed had received lighter punishments under similar circumstances. See id. at 6, 14–15. On May 4, 2015, Defendant opened an internal investigation into these allegations as well as Plaintiff's allegations of verbally "abusive treatment" by Lt. Daggers. Id. That same day, Plaintiff signed a document entitled "Notice of Internal Administrative Investigation," warning that the failure to "be truthful [or] . . . maintain the confidentiality of this investigation . . . could result in disciplinary action up to and including termination." ECF No. 16, Ex. 7.

On May 23, 2015, Defendant opened "an administrative investigation into potential policy violations by Plaintiff." ECF No. 11 at 6. The aims of this second investigation were allegations that Plaintiff had: 1) engaged in physical violence or fighting; 2) made false and misleading statements during the prior investigation; and 3) failed to maintain the confidentiality

of the prior investigation.  Id. at 6–7.  Plaintiff signed an additional "Notice of Internal Administrative Investigation" at the opening of this second investigation. ECF No. 16, Ex. 8.

On June 8, 2012, Defendant issued Plaintiff a "Notice of Intent to Impose Disciplinary Action" relaying the conclusions of the second administrative investigation.  ECF No. 11, Ex. 3 at 69–72.  Plaintiff responded to these findings on June 11, 2012.  Id., Ex. 3 at 73.  On July 10, 2012, Defendant informed Plaintiff that his actions "warrant[ed] the termination of [his] employment," finding that he had "broken the trust and confidence [Defendant] must have in its Public Safety officials."  Id., Ex. 3 at 74–75.

In response to his termination, Plaintiff filed a grievance seeking reinstatement of his employment.  A grievance hearing was conducted on October 23–24, 2012.  Id. at 7; see also ECF No. 16, Ex. 20.  On November 1, 2012, the grievance panel issued its decision, supporting Defendant's disciplinary action and termination.  ECF No. 11 at 7.  Plaintiff now brings the instant action alleging disparate treatment due to his disability, ADHD, and race, Caucasian.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also McKinney v. Bd. of Trustees of Md. Cmty. Coll., 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the fact is not necessary to clarify the application of the law.") (citations omitted).  In deciding a motion for summary judgment, district courts must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 247–48 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411–12 (4th Cir. 1986) (noting that the nonmoving party must offer more than unsupported speculation to withstand a motion for summary judgment). A nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Therefore, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 324.

### III. DISCUSSION

Defendant's Motion is primarily based on the premise that Plaintiff has neither set forth sufficient evidence to create a genuine dispute as to any material fact nor, based on the undisputed facts, established a prima facie case towards any of the three counts alleged in the Complaint. See ECF No. 11 at 17.

Plaintiff argues that a factual dispute exists regarding the veracity of the underlying events that served as Defendant's reasons for his termination. See ECF No. 16 at 4–6. Accordingly, Plaintiff argues that there are undetermined factual issues as to whether "Plaintiff

committed an assault, . . . made false and misleading statements, . . . [or] failed to maintain confidentiality." Id. However, such inquiries are not appropriate because the "sole concern" of the Court is whether reasons provided for Plaintiff's termination were discriminatory, not whether they were "wise, fair or even correct." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998).

"[F]ocusing on the quality of internal investigations misses the point. A federal court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'" Cupples v. AmSan, LLC, 282 F. App'x 205, 210 (4th Cir. 2008) (quoting DeJarnette, 133 F.3d at 299). Therefore, Plaintiff is not entitled to a trial aimed at reviewing the factual determinations made by Defendant's internal investigation and confirmed by the grievance panel. Any genuine disputes between the parties on these underlying factual issues are not "material" and do not prevent this Court from granting summary judgment against Plaintiff. Despite such a strong reliance on the rationale provided by the employer, Plaintiff can still prevail if he "produc[es] evidence from which a reasonable jury could conclude that [Defendant]'s explanation was 'unworthy of credence' or was a cover-up for unlawful discrimination." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 211 (4th Cir. 2014) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). The limited evidence offered by Plaintiff, however, does not lead to any such inference or conclusion.

The rest of Plaintiff's alleged factual disputes are either not material, such as the breadth of Plaintiff's discovery activity, or are challenged solely through the use of Plaintiff's own testimony, such as the allegation of theft by another employee or the events surrounding Plaintiff's 2010 affair. It is well established that "mere belief or conjecture, or the allegations and

6

denials contained in his pleadings" are insufficient to defeat a summary judgment motion. Doyle, 877 F. Supp. at 1005. Accordingly, Plaintiff's heavy reliance on his own deposition testimony, see ECF No. 16 at 6–8 (citing ECF No. 16, Ex. 22), fails to create a genuine dispute of fact.

Defendant has shown, despite the inferences that must be drawn in Plaintiff's favor, that Defendant is entitled to judgment as a matter of law on all three counts. See Fed R. Civ. P. 56(a). In response, Plaintiff has failed to provide "specific facts" to undermine Defendant's arguments. See Matsushita, 475 U.S. at 586–87. Plaintiff's prima facie claims under both the ADA and Title VII each require "proof that points toward illegal discrimination." See, e.g., Holmes v. Bevilacqua, 794 F.2d 142, 147 (4th Cir. 1986). Quite simply, Plaintiff has provided none.

## A. ADA Claim

In Count One of his Complaint, Plaintiff references alleged Americans with Disabilities Act ("ADA") violations for wrongful discharge, failure of accommodation, and a hostile work environment. ECF No. 1 at 10–12. In a brief defense of his allegations of a lack of reasonable accommodation and a hostile work environment, ECF No. 16 at 15–16, Plaintiff cites only to his own deposition testimony. Standing alone, this is insufficient to rebut the evidence presented by Defendant on summary judgment. See Doyle, 877 F. Supp. at 1005.

More specifically, a prima facie claim for wrongful discharge under the ADA requires a plaintiff to show "that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th

7

Cir. 2001). Here, even assuming that all of the first three elements are met, which the Court does not, Plaintiff has offered insufficient evidence to support "a reasonable inference of unlawful discrimination." See id. Instead, Plaintiff seeks primarily to show that the results of Defendant's internal investigation were pretextual, inaccurate, and unrelated to critical job duties. See ECF No. 19 at 10–13. However, barring evidence showing that the results of Defendant's investigation are "unworthy of credence" or intended as a "cover-up for unlawful discrimination," the Court must accept those findings. Walker, 775 F.3d at 211. Plaintiff has provided no such evidence. Therefore, the Court has satisfied its "sole concern" that the reasons provided for Plaintiff's termination were not discriminatory. DeJarnette, 133 F.3d at 299.

To succeed on a claim for failure to accommodate, a plaintiff must establish "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001). Again, irrespective of the Court's findings as to the first three elements, Plaintiff has failed to provide evidence in support of the fourth. On the contrary, during his deposition Plaintiff admitted that he was never denied any "specific request" for accommodation and Defendant's unopposed evidence shows that certain accommodations were provided by his superiors without such a request. See ECF No. 11 at 11. Accordingly, Plaintiff has failed to make a prima facie case that Defendant "refused" to make accommodations that would assist him in performing "the essential functions of his position." See Rhoads, 257 F.3d at 387 n.11.

A hostile work environment is defined as one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Although fitting the evidence of a case to this definition is inherently a factual determination, summary judgment can still be "appropriate in cases where the facts are clearly insufficient." Walker, 775 F.3d at 208. Aside from his own testimony, Plaintiff has provided no evidence by which a trier of fact could determine "the objective severity of harassment . . . from the perspective of a reasonable person in the plaintiff's position."[1] Ziskie v. Mineta, 547 F.3d 220, 227 (4th Cir. 2008).

Without evidence to support the necessary elements of his claims of discriminatory discharge, failure of accommodation, or hostile work environment, Count One is **DISMISSED**.

**B. Title VII Claim**

Count Two alleges that "Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of his race." ECF No. 1 at 13. To move forward with such a claim under Title VII, a plaintiff must show the following: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Similar to his ADA claims, Plaintiff clearly falls short on the fourth element. To support his accusation of "different treatment from similarly situated employees outside the protected class," Plaintiff points only to the anecdote of James Powell, an African-American former FF/Paramedic. ECF No. 11 at 14 (citing Pl. Dep. Tr. 172). Plaintiff claims that Mr. Powell

---

[1] Plaintiff repeatedly references the "harsh words" and "vulgarity" of his supervisor, Lt. Daggers, as the basis for his discomfort. Even if Plaintiff had offered further evidence of these facts, however, they likely would not rise to the level of actionable discrimination. See, e.g., Walker, 775 F.3d at 207 (explaining that "Title VII does not 'attempt to purge the workplace of vulgarity'") (quoting Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996))).

9

received a less severe punishment for "a far more serious offense." ECF No. 16 at 17. However, Defendant has presented a sworn affidavit from Plaintiff's former supervisor who explains that Mr. Powell's case was differed from Plaintiff's because Mr. Powell was "honest with his superiors . . . made no inconsistent or misleading statements; did not describe committing any violent acts against a person; and did not breach confidentiality." ECF No. 11, Ex. 2 at 5–6.

Mr. Powell was charged with attempted malicious wounding and intentional property damage. Id. Mr. Powell pled guilty to the property charge, and the felony charge was dropped. Whereas, by comparison, Plaintiff was charged with misdemeanor assault, a charge that was later dismissed. In this context, the appropriate employment consequences flowing from Plaintiff and Mr. Powell's respective actions are not for this Court to determine, but should be left to the broad discretion of the employer. See DeJarnette, 133 F.3d at 299. The issue now is whether the evidence provided indicates that the two situations were sufficiently similar to give rise to an actionable inference of racial discrimination. Here, the exacerbating nature of Plaintiff's behavior throughout the investigative process significantly differentiates his case from that of Mr. Powell's. See ECF No. 11, Ex. 2 at 5–6. Furthermore, and contrary to the allegations of the Complaint, Plaintiff even received an employment benefit not afforded to Mr. Powell, the ability to work in a "light duty" capacity for a portion of the time that his criminal charges remained pending. Id. at 15. Accordingly, since the factual comparison to Mr. Powell was the only justification provided by Plaintiff for satisfying the fourth element of his Title VII claim, Count Two of the Complaint is **DISMISSED.**

**C. Retaliation Claim**

Recovery on the basis of a "retaliation" claim requires a plaintiff to show three elements. See Bryant v. Aiken Reg'l Med. Centers Inc., 333 F.3d 536, 543 (4th Cir. 2003). Those elements

are "that (1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of his employer; and (3) the employer took the adverse action because of the protected activity." Id. (quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001)). Here, even assuming that Plaintiff's contact with Defendant's Human Resources Department was protected activity, Plaintiff cannot show that he suffered any adverse action as a result.

In an attempt to support the existence of an "adverse employment action," Plaintiff points to a "reprimand[]" issued to him by Defendant on May 2, 2012. See ECF No. 16 at 18 (citing Ex. 13). This letter stated that its goal was to remind Plaintiff of the individual designated as his appropriate point of contact throughout his suspension period. Id., Ex. 13 at 1. Rather than executing a punishment against Plaintiff for his actions, the letter warned him that "[a]ny breach of this [chain-of-command] procedure will result in disciplinary action." Id. Absent further disciplinary consequences, this routine reminder of administrative policy does not amount to an adverse employment action sufficient to support a claim of retaliation. Accordingly, Count Three is **DISMISSED**.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 10, is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 11, 2015

Raymond A. Jackson
United States District Judge

11